UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                      MEMORANDUM & ORDER
    -against-                                          05-CR-714 (NGG)(KAM)

LARRY BRONSON,

               Defendant.
---------------------------------------------------------- X
GARAUFIS, District Judge.

       Pursuant to Title 28 United States Code, Section 1927 and the court's inherent powers to regulate its own docket, the court directs attorney Ardith Bronson and the law firm of Weil, Gotshal & Manges, and all Weil, Gotshal & Manges partners and employees who have knowledge of the allegations set forth below, to respond with sworn statements not later than November 4, 2005 with respect to the allegations and circumstances set forth in this Memorandum and Order (M&O).

**I.    FACTS**

       On September 28, 2005, Larry Bronson ("Defendant") was indicted in this courthouse on two counts of racketeering and contempt of court. At an arraignment and pre-trial detention hearing on September 30, 2005, after Defendant pled not guilty, I found that Defendant was a flight risk, pursuant to 18 U.S.C. §§ 3142(e)-(g). As a result, I required the Defendant to produce a bail package of a $2 million bond supported by at least $1 million in collateral that would guarantee, *inter alia*, Defendant's appearances in court. (Sept. 30, 2005 Tr. at 30-31.) At that time, Defendant produced a person representing herself to be his daughter, Ardith Bronson, who

1

appeared by telephone before me from Miami, Florida. (Id. at 33-40.) Ardith Bronson advised by phone that she is an associate lawyer employed by the law firm of Weil, Gotshal & Manges and that she was prepared to sign as a suretor for a $2 million bond as part of her father's bail package, and to "collaterialize his bail with the equity in [her] home." (Id. at 35-36.) Based upon her statement to the court, I found that she understood her potential liability as a suretor.

> THE COURT: you would all be responsible for the full amount . . . as a suretor on the bond in the full amount of two million dollars . . . . Do you understand that?
>
> MS. A. BRONSON: Yes, sir.

(Id. at 37.) Nevertheless, at that time Defendant was unable to produce a bail package satisfactory to this court, and I ordered Defendant's permanent detention until such time as Defendant assembled a bail package that met my requirements. (Sept. 30, 2005 Order.) At an October 6, 2005 bail hearing, Ardith Bronson was physically present in the courtroom as Marc Fernich, bail counsel for Defendant Bronson, stated that Ms. Bronson was willing to post $200,000 in security and sign on the bond. (Oct. 6, 2005 Tr. at 4-5.)

> MR. FERNICH: . . . we have raised to date . . . $200,000 cash from Mr. Bronson's daughter, who is here in the court today and who you spoke to on the phone last week. She's an attorney with Weil Gotshal in Miami.
>
> THE COURT: Where is she?
>
> THE DEFENDANT: Right here (indicating).
>
> THE COURT: Good morning. You may be seated.
>
> . . . .
>
> MR. FERNICH: The daughter will post $200,000 and, to my understanding, sign on the bond.

(Id.)  However, I again found that Defendant had not produced a bail package with sufficient collateral to warrant his release, and I reaffirmed Defendant's permanent detention pending the presentation of a satisfactory bail package.  (Id. at 28.)

It was my conclusion, based on Ardith Bronson's telephonic appearance on September 30, 2005, and her presence at the October 6, 2005 hearing that Ms. Bronson wished to assist her father by acting as a suretor to secure his pretrial release, and that she was willing to sign a bond for $2 million dollars backed by $200,000 in equity from her home.

However, Ms. Bronson's disposition to assist her father dramatically changed six days later.  At the next hearing on October 12, 2005, Defendant's bail counsel Robert Katzberg and Kenneth Kaplan appeared for Defendant, and represented to the court that Ardith Bronson would not sign as a suretor in any capacity.  (Oct. 12, 2005 Tr. at 7-8.)  When I asked Mr. Katzberg why this might be the case, he responded "I don't want to say it in open court because . . . it's a personal situation."  (Id. at 8.)  I granted Defendant's counsel's application to state at sidebar his understanding of why Ms. Bronson could not act as a suretor in this matter.  (Id.)  At sidebar, defense counsel relayed their understanding that Ardith Bronson had declined to act as a suretor because she was under consideration as a partner in Weil, Gotshal & Manges, and she was intimidated by a partner of the law firm who told her that the firm's clients had expressed dissatisfaction with her association with her father's case.  (Id. at 10-12.)  Specifically, Mr. Kaplan stated:

> MR. KAPLAN:  . . . . My understanding is that [Ms. Bronson is] . . . coming up for partnership at Weil Gotshal; that she represents some major corporations and apparently the clients are concerned.  United Health Care is one of them.
>     The clients are concerned; the partner that is associated with her is concerned, and statements were made by the government about the brother, and I

> think that all of this has probably been communicated to the partner at Weil Gotshal and obviously she's been scared off in some way.
>
> I'm not quite sure how and why, but I think it's fair to say that she is a little intimidated by providing a financial affidavit and signing on a bond . . for whatever reason . . . .

(Id. at 10-11.) I granted Mr. Kaplan's application to have the sidebar sealed, id. at 12, which I have since unsealed for the purposes of this M&O.

On October 18, 2005, the United States Pretrial Services Agency ("Pretrial Services") interviewed Ms. Bronson as to her suitability as a suretor. Melony Bedford, a Senior Pretrial Services Officer, signed a statement declaring that although Mr. Kaplan "noted that Ardith Bronson is willing to post $200,000 in collateral but does not want to sign her name to any documents in this case," Pretrial Services "made several attempts to obtain standard surety information via telephone, but Ms. Bronson has not responded to our calls." (Oct. 18, 2005 Pretrial Services Statement.) As a result, "Pretrial Services does not deem Ardith Bronson to be a suitable surety in this case." (Id.)

Currently, Ms. Bronson does not agree to act as a suretor in any capacity, the issue of Mr. Bronson's bail is not resolved, and Mr. Bronson remains in detention, caused in part by his daughter's change of heart.

## II. DISCUSSION

This court has the authority to issue sanctions pursuant to 28 U.S.C. § 1927 and its inherent powers to sanction attorneys admitted to practice in any court of the United States who in bad faith engage in conduct intended to interfere with this court's administration of justice. Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United

> States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Id. Section 1927 "is specifically designed to deter bad faith conduct by any attorney." Herrera v. Scully, 143 F.R.D. 545, 552 (S.D.N.Y. 1992) (citing Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F.2d 1009, 1013 (2d Cir. 1988)).  Sanctions for bad faith conduct under Section 1927 is not limited to attorneys, but also extends to law firms engaged in such conduct.  See Brignoli v. Balch Hardy & Scheinman, Inc., 735 F. Supp. 100, 102 (S.D.N.Y. 1990).  A court may order sanctions "pursuant to § 1927 *sua sponte*, so long as . . . counsel had notice and an opportunity to be heard."  Forman v. Mt. Sinai Medical Center, 128 F.R.D. 591, 604 n.24 (S.D.N.Y. 1989) (citing Braley v. Campbell, 832 F.2d 1504, 1515 (10th Cir. 1987)).  Furthermore, this court has "inherent authority to impose sanctions for bad faith, which includes a broad array of willful improper conduct."  Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001); see also Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

The decision of Defendant's daughter, Ardith Bronson, not to act as a suretor in her father's bail package has complicated and delayed his release, and may have resulted in unnecessary court proceedings which have wasted the time and resources of this court. Subsequent to the October 6, 2005 hearing, this court has held two hearings that may have been unnecessary had Ms. Bronson maintained her willingness to act as a suretor.  Meanwhile, the Defendant remains in detention.  Moreover, the mysterious circumstances of her refusal are of grave concern to the court based on the representations of Defendant's counsel, Messrs. Kaplan and Katzberg.

In stating the above facts as they were represented to me, I do not reach any conclusions as to the relevant conduct of Weil, Gotshal & Manges and its partners. The law firm of Weil, Gotshal & Manges has a national reputation for its practice of law, including the area of criminal defense. That is all the more reason why the court is alarmed by assertions that its partner(s) made coercive statements towards Ms. Bronson in a manner that may adversely impact this court's ability to administer justice. Furthermore, its partners are undoubtedly aware that conduct that is unlawful or prejudicial to the administration of justice would violate their professional and ethical obligations as attorneys. Since the allegations brought before me are troubling, they require that I obtain additional information so that this court may reach a determination regarding what conduct did or did not occur that resulted in Ms. Bronson's decision not to act as a suretor for her father, and what further proceedings should be had.

## III. CONCLUSION

I direct that not later than November 4, 2005, attorney Ardith Bronson and the law firm of Weil, Gotshal & Manges and all partners and employees of Weil, Gotshal & Manges who have had contact with Ms. Bronson in connection with the above allegations shall submit sworn statements to the court as to the circumstances that led to Ms. Bronson's refusal to serve as a suretor in this matter, including, but not limited to discussions regarding the impact, if any, that her involvement with her father's criminal proceedings would have on the terms and conditions of her employment at Weil, Gotshal & Manges. Service will be effected today by facsimile and overnight courier to the New York office of Weil, Gotshal & Manges, 767 Fifth Avenue, New York, New York, 10153, facsimile number (212) 310-8007, to the attention of Stephen J. Dannhauser, Chairman of Weil, Gotshal & Manges, and to Ardith Bronson at her work address,

the Miami office of Weil, Gotshal & Manges, 1395 Brickell Avenue, Suite 1200, Miami, Florida, 33131, facsimile number (305) 577-3100.

SO ORDERED.

Dated: October 26, 2005                   _____/s/_____
      Brooklyn, N.Y.                           Nicholas G. Garaufis
                                            United States District Judge