UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

UNITED STATES OF AMERICA,

     v.                                 <u>MEMORANDUM & ORDER</u>
                                                 05-CR-714 (NGG)

LARRY BRONSON,

          Defendant.

_____X

NICHOLAS G. GARAUFIS, United States District Judge:

      Defendant Larry Bronson ("Defendant" or "Bronson") is seeking an Order (1) dismissing all four counts of the Superseding Indictment, or (2) in the alternative, directing the Government to provide Defendant with a bill of particulars regarding Counts One, Three and Four of the Superseding Indictment and directing the Government to provide any <u>Giglio</u> and <u>Jencks</u> materials upon which it intends to rely at least ninety days in advance of trial and notice of any Rule 404(b) materials at least thirty days in advance of trial. (Defendant's Notice of Pretrial Motions at 1.)

      More specifically, Defendant argues that (1) Count One (racketeering conspiracy) should be dismissed because it is unconstitutionally vague and venue is improper, (2) Count Two (contempt of court for aiding and abetting an individual on supervised release violate the terms of that release) should be dismissed for failure to charge a cognizable offense, (3) Count Three (conspiracy to commit money laundering by conspiring with others to launder the proceeds of narcotics trafficking) should be dismissed for lack of proper venue, and (4) Count Four (contempt of court for aiding and abetting an individual on pretrial release violate the conditions of that release) should be dismissed because the Government lacks the authority to pursue this

1

charge. The United States of America ("United States" or "Government"), in reply, argues that the court should not dismiss these charges and that Defendant is not entitled to a bill of particulars or early disclosure of discovery, <u>Giglio</u> or <u>Jencks</u> materials.

For the reasons set forth below, Defendant's pretrial motions are granted in part and denied in part. Specifically, his motions to dismiss Counts One and Three in the Superseding Indictment are DENIED, and his motions to dismiss Counts Two and Four in the Superseding Indictment are GRANTED. Defendant's alternative motion for a bill of particulars and for early disclosure of <u>Giglio</u>, <u>Jencks</u>, and 404(b) materials is DENIED.

## I.    Factual Background

Defendant was initially charged on September 28, 2005 in a two-count Indictment with conspiring to participate in the affairs of a racketeering enterprise and contempt of court. (Indictment ¶¶ 14, 16; Defendant Larry Bronson's Brief in Support of Pretrial Motions ("Def. Br.") at 1.) On April 20, 2006, the Grand Jury returned a Superseding Indictment adding one count of conspiracy to commit money laundering and a second count of contempt of court. (<u>Id.</u>)

The first count alleges that, during a six-year period, Bronson conspired with unnamed others to participate in the affairs of La Cosa Nostra ("LCN") through a pattern of racketeering activity, including acts of obstruction of justice, witness tampering, retaliation against a witness and bribery. (Superseding Indictment ¶¶ 13, 14.) The second count charges Bronson with contempt of court for having aided and abetted an "individual on supervised release" to violate the conditions of that release by meeting with a convicted felon. (<u>Id.</u> ¶ 15.) The third count charges him with conspiracy to commit money laundering for having conspired with unnamed others to launder the proceeds of narcotics trafficking. (<u>Id.</u> ¶ 16.) The fourth and final count of the Superseding Indictment charges Bronson with contempt of court for having aided and

abetted an individual on supervised release in the Eastern District of New York to violate the conditions of pretrial release by misrepresenting the individual's whereabouts to officers of the United States Pretrial Services.  (Id. ¶ 17.)

## II.  Defendant's Requested Relief

### 1.  Count One (Racketeering Conspiracy)

#### A.  Unconstitutional Vagueness

Defendant asks the court to dismiss Count One of the Superseding Indictment, which charges Bronson with conspiring to participate in the affairs of a racketeering enterprise, as unconstitutionally vague.  Defendant argues that, "[o]ther than providing notice that Mr. Bronson is being prosecuted for his role as an attorney, that the allegations relate in some way to organized crime, and that the racketeering activity can be generically described as obstruction of justice, the indictment does not contain any specifics to place Mr. Bronson on notice of what it is he is actually being accused of having done, leaving him unable to defend himself."  (Def. Br. at 1.)  Defendant further contends that this count "does not allege any facts to support a finding of proper venue in the Eastern District of New York."  (Id.)

Specifically, Defendant argues that Count One fails to set forth sufficient facts to satisfy the Fifth or Sixth Amendments.  (Id. at 3.)  Defendant cites a number of cases including United States v. Carrillo, 229 F.3d 177, 183 (2d Cir. 2000), for the proposition that "an indictment must 'be framed to apprise the defendant[,] with reasonable certainty, of the nature of the accusation against him' and 'accompanied with such a statement of the facts and circumstances as will inform the accused of the accusation against him.'"  (Id.)  Defendant points out that the Superseding Indictment contains only two paragraphs of allegations particular to this charge and that "those paragraphs are completely devoid of any factual specificity.  (Id.)  Defendant's other

objection to this count is that Paragraph 11, entitled "Role of the Defendant," alleges that

Bronson engaged in activities that are not properly explained and that are "so remarkably vague .

. . that it is impossible for Mr. Bronson to ascertain what conduct on his part – over the six-year

period alleged in Count One – is being charged."  (Id.)

An Indictment must (1) contain the essential elements of the offense charged so as to

inform the defendant of the nature and cause of the accusation, as required by the Sixth

Amendment, see Carrillo, 229 F.3d at 183, (2) contain enough detail to enable a defendant to

"plead double jeopardy in a future prosecution based on the same set of events," United States v.

Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992), and (3) "contain some amount of factual

particularity to ensure that the prosecution will not fill in elements of its case with facts other

than those considered by the grand jury," in violation of the Fifth Amendment, United States v.

Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

The Second Circuit has made the Government's pleading obligations quite clear in RICO

conspiracy cases.  See Wong Tai v. United States, 273 U.S. 77, 80 (1927); United States v.

Cohen, 518 F.2d 727, 733 (2d Cir. 1975) ("The Government need not, when charging

conspiracy, set out with precision each and every act committed by the conspirators in the

furtherance of the conspiracy").)  See also United States v. Gotti, 2004 WL 32858 (S.D.N.Y.

Jan. 6, 2004) ("[T]he allegations for a RICO predicate act need not be more than generic

references to the proscribed activity"); United States v. Martinez, 2007 WL 1302720, at *4 (E.D.

Wis. May 3, 2007) ("[T]he defendant is charged with a RICO conspiracy, not a substantive

RICO count.  A RICO conspiracy does not require an overt act or specific act to affect the object

of the conspiracy").  In United States v. Glecier, 923 F.2d 496, 501 (7th Cir. 1991), the court

dealt with a charge of participation in a racketeering conspiracy and found that the above

requirements were met by an indictment since "neither overt acts nor specific predicate acts that the defendant agreed personally to commit need be alleged or proved" and "these notice and double jeopardy factors do not require the recitation of specific case names, dates, times, and places of alleged bribes."  Id. at 500.

In this case, the "means and methods" section of Count One alleges that Bronson and "members and associates of [LCN] participated in the conduct of the affairs of the enterprise by," *inter alia*, (1) obstructing justice and tampering with witnesses in United States v. Steven E. Kaplan, (2) "bribing and attempting to bribe witnesses in United States v. Kaplan so they would testify favorably, both to the grand jury and at trial," (3) "facilitating potential retaliation against an individual by revealing his suspected cooperation to members of the enterprise," and (4) using Bronson's connection to the enterprise to make implied threats of physical violence against various individuals, including extortion targets."  (Id. at 4 (citing Superseding Indictment ¶ 10(a)-(d)).)  Defendant argues that "[e]ach of these allegations lack any particularity with regard to such basic but critical facts as (1) who did the alleged acts of obstructing, tampering, bribing, or retaliation, (2) who the individuals were that were allegedly obstructed, tampered with, bribed, or retaliated against, (3) where the alleged conduct took place, (4) when the alleged conduct took place, and (5) . . . what criminal investigations were involved."  (Id.)

The racketeering conspiracy allegations here, as in Glecier, meet constitutional pleading requirements because the Superseding Indictment identifies a proper enterprise, names Bronson as someone who was "employed by and associated with" that enterprise, and "expressly alleges" that Bronson knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c).  (Govt. Response at 9.)  Furthermore, the Superseding Indictment specifies the time period during which the conspiracy operated, lists the specific types of predicate crimes that were allegedly

5

committed (witness tampering, obstruction of justice, retaliation against a witness or informant, obstruction of a criminal investigation, bribery, and extortion), and discusses in detail the means and methods of the conspiracy. (Id. at 10.) Thus, the information contained therein adequately informs Bronson of the nature of the charge so he can prepare a defense. Finally, the Government argues that it has "already produced substantial discovery" which "serve[s] to apprise Bronson of the nature of the charges, allow him to prepare a defense, and alert him to any double jeopardy issues." (Govt. Response at 13.)

Given the above, I find Defendant's request conflates two issues, namely, the legal sufficiency of the Superseding Indictment and the remedy of knowledge of the details of the offense. Though the Superseding Indictment is a bare-boned one, I cannot find that it runs afoul of the pleading requirements for a RICO conspiracy charge. In oral argument on August 3, 2007, the Government maintained that it has and will continue to provide Defendant with appropriate discovery and I will rely on these assurances, which have been given to me by officers of the court, at this stage in the litigation.

### B.      Improper Venue

Defendant also argues that Count One should be dismissed on the basis that venue is improper in the Eastern District of New York because the Superseding Indictment fails to lay out specific acts that took place in this district. (Def. Br. at 12.)

In cases that charge a continuing offense, such as a RICO conspiracy, "the criminal acts in question" must "bear 'substantial contacts' with" the venue in which the charges are brought. United States v. Saavedra, 223 F.3d 85, 93 (2d Cir. 2000). The factors for the court to consider are "(1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) the suitability of the venue chosen for accurate factfinding." Id.

at 92.

Defendant argues that there are only a few facts alleged in the Superseding Indictment that identify a venue at all, and that venue is not in this district: (1) obstructing justice and tampering with witnesses in United States v. Steven E. Kaplan, et al. in the Northern District of Georgia, and (2) bribing and attempting to bribe witnesses in that same case. (Def. Br. at 13-14.) Defendant argues that Count One does not otherwise allege any facts to support a finding of venue in the Eastern District of New York. (See Def. Br. at 14 (citing United States v. Peterson, 357 F. Supp. 2d 748, 751-52 (S.D.N.Y. 2005) (The Government has the burden of "showing that the indictment alleges facts sufficient to support venue").)

The Superseding Indictment alleges facts sufficient to support venue because it alleges that the criminal activity occurred "within the Eastern District of New York and elsewhere." (Superseding Indictment ¶¶ 13, 16). The law of this Circuit is clear that the Government's burden is satisfied with regard to pleading venue by alleging that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information. See United States v. Bellomo, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003) (Glasser, J.) ("[T]he indictment, alleging on its face that the offenses occurred 'within the Eastern District of New York and elsewhere,' suffices to sustain it against this pretrial attack on venue"); United States v. Szur, 97-CR-108, 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998) ("[O]n its face, the Indictment alleges that the offense occurred 'in the Southern District of New York and elsewhere,' which is sufficient to resist a motion to dismiss").) Here, the Government has alleged that Bronson's conduct occurred in the Eastern District of New York and has specifically informed the court that it will prove venue at trial. As a matter of pleading, that is sufficient. Should the Government fail to prove venue at trial, the court will, of course, entertain a motion

to dismiss at the conclusion of the Government's case.

### 2.    Count Two (Contempt of Court)

Defendant further asks the court to dismiss Count Two of the Superseding Indictment, which charges Bronson with contempt of court for having aided and abetted an "individual on supervised release" to violate the conditions of that supervised release by meeting with a convicted felon.  (Def. Br. at 1.)  Defendant argues that, "[a]s a matter of law, . . . contempt of court simply cannot be charged for a violation of supervised release.  As a result, Count Two must be dismissed because Mr. Bronson cannot be charged with aiding and abetting a non-offense."  (Id.)

The Government has two alternative theories for its contempt charge.  First, the Government alleges that Bronson aided and abetted his client in violating a condition of his supervised release, and thus Bronson should be punished under 18 U.S.C. § 401[1] and 18 U.S.C. § 2.[2]  Bronson argues that 18 U.S.C. § 3583, which sets forth the sanctions a court may impose if a defendant violates a condition of supervised release, does not authorize the Government to prosecute a person with contempt for violating a supervised release.  (Id.)  Thus, Bronson concludes, he could not have aided and abetted any offense.  (Id.)  Second, the Government argues that even if Bronson did not aid and abet any contempt offense, Bronson himself committed a substantive violation of § 401 by setting up the meeting between his client and the

---

[1] 18 U.S.C. § 401 provides, "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command."

[2] 18 U.S.C. § 2 provides, "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

convicted felon, thus resisting a "lawful writ, process, order, rule or command of a court of the United States." 18 U.S.C. § 401(3).

Both of the Government's theories are without merit. First, the Superseding Indictment fails to allege that Bronson aided and abetted his client's contempt of court because the Government has not alleged that Bronson's client committed contempt of court. 18 U.S.C. § 3583, which sets forth the sanctions a court may impose if a defendant violates a condition of a supervised release, does not authorize the Government to prosecute a person with contempt for violating a supervised release. Crucially, when it was originally enacted in 1984, § 3583 did indeed authorize a court to punish a violation of supervised release as contempt of court under 18 U.S.C. § 401(3). See Gozlon-Perez v. United States, 498 U.S. 395, 401 (1991). However, § 3583 was amended in 1988 to eliminate the specific provision authorizing contempt of court as a sanction for violating supervised release. See 134 Cong. Rec. H11108-01 § 7108 available at 1988 WL 182261 (explaining that 102 Stat. 4181 § 7108(b)(2) "amends 18 U.S.C. § 3583(e) by striking out paragraph (3), which provides that the court can treat a violation of a condition of a supervised release as a contempt of court under 18 U.S.C. § 401(3)").

When Congress amends a statute, the court interpreting the statute must assume that Congress intended for "its amendment to have a real and substantial effect." Stone v. INS, 514 U.S. 386, 397 (1995); see also United States v. NEC Corp., 931 F.2d 1493, 1502 (11th Cir. 1991) ("[W]hen the legislature deletes certain language as it amends a statute, it generally indicates a[n] intent to change the meaning of the statute."); Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1444 (D.C. Cir. 1988) ("Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning."). There is no reasonable explanation for why Congress would eliminate the

9

specific paragraph authorizing contempt of court as a sanction for violating supervised release, unless it intended to prohibit such a sanction.

The Government argues that it is not charging Bronson under § 3583, but rather for aiding and abetting a violation of § 401(3) by assisting his client in disobeying "a lawful writ, process, order, rule, decree, or command of a court of the United States." 18 U.S.C. § 401(3). However, the Supreme Court has held that "[a] specific provision controls over one of more general application." Gozlon-Perez, 498 U.S. at 407. "When two statutes are in conflict, the statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim." Greene v United States, 79 F.3d 1348, 1355 (2d Cir. 1996).

In this case, § 401(3) and § 3583 are in conflict. Whereas § 401(3) appears to authorize contempt as a sanction for violation of a supervised release, the 1988 amendment to § 3583 strongly indicates the intent of Congress to eliminate such a sanction. The fact that the original language of § 3583 contained a specific reference to § 401(3), see 134 Cong. Rec. H11108-01 § 7108 available at 1988 WL 182261, and that Congress consciously deleted that language in eliminating the contempt sanction, demonstrates even more conclusively that Congress was considering contempt sanctions under § 401(3) when it amended the statute. To argue that the 1988 Congress would have permitted a contempt charge under § 401(3) for violation of a condition of supervised release – even if this condition is *also* a "writ, process, order, rule, decree, or command of a court of the United States" – defies its clearly expressed intention in amending the statute. Moreover, the parties have not identified and the court has not been able to identify anything in the legislative history of the 1988 amendments that suggests any other conclusion.

Thus, the two statutes are in conflict. And since § 3583 sets forth a comprehensive scheme that specifically addresses violations of supervised release, § 3583 controls over § 401, which contains terms applicable to "lawful writ[s], process[es], order[s], rule[s], decree[s], or command[s]" in general. 18 U.S.C. § 401(3). Because § 3583 does not authorize contempt of court as a sanction for violation of a condition of supervised release, Bronson's client could not be charged with contempt for such a violation. It follows that Bronson cannot be charged with aiding and abetting contempt of court. 18 U.S.C. § 2, the aiding and abetting statute, "does not define a crime," Campbell, 426 F.2d at 553, but rather "[i]n order to secure a conviction under 18 U.S.C. § 2, the Government must prove . . . that the underlying crime was committed by someone other than the defendant," Frampton, 382 F.3d at 223. Since Bronson's client could not have committed the offense of contempt of court for violation of his supervised release, the Government cannot prove that the underlying crime was committed by someone other than Bronson.

The Government's second argument is that even if Bronson did not commit any offense as an aider and abettor, Bronson himself is in contempt of court for violating a lawful "writ, process, order, rule, decree, or command of a court of the United States." 18 U.S.C. § 401(3). The Government does not identify any case law that authorizes a court to impose contempt sanctions on a defendant for violation of § 401(3) where no writ, process, order, rule, decree, or command has been directed at the defendant himself. Nor has the court been able to locate any such case after independent research. However, even assuming that the court possesses such a power, the Government's argument that Bronson can be charged with a substantive violation of § 401(3) is unsustainable.

In order for the Government to establish the elements of a § 401(3) contempt charge, the

11

Government must identify at least one "writ, process, order, rule, decree or command" that Bronson has violated. At this point, I am unable to identify any writ, process, order, rule, decree or command that Bronson could have violated other than the supervised release condition. The supervised release order was directed at Bronson's client as opposed to Bronson. As a result, Bronson was not legally capable of having violated it.

Finally, I address the Government's argument that I cannot dismiss this charge under Wexler, 621 F.2d 1218, 1223 (2d Cir. 1980). In Wexler, the Second Circuit held that "[a] motion to dismiss for failure to charge an offense . . . does not lie where . . . the indictment tracks the language of the statute and sufficiently sets forth the elements of the crime charged." There is no question that the indictment tracks the language of § 401(3) and sets forth its elements; the indictment states that "LARRY BRONSON, together with others did knowingly and willfully disobey and resist a lawful writ, process, order, rule, decree and command of a court of the United States." (Superseding Indictment ¶ 15.) The Indictment uses the precise language employed in § 401(3). However, Wexler is inapposite since it dealt with a situation in which the court found that the crime charged, a violation of the National Stolen Property Act, was cognizable because the forged equipment leases at issue in that case were indeed "securities" under the Act. It did not deal with a situation, like the present one, in which a crime alleged to have been committed is not viable under any legal theory. I simply cannot fathom that this court is powerless to dismiss a criminal charge that alleges conduct that does not violate a criminal statute simply because the language used in the Superseding Indictment tracks the language in the statute.

Accordingly, Bronson's motion to dismiss Count Two is granted. The Government is, of course, free to represent this contempt charge if it can supersede under a legally cognizable

theory that points to a particular order or writ of the court of which Bronson's behavior is alleged to have run afoul.

### 3. Count Three (Conspiracy to Commit Money Laundering)

Defendant further asks the court to dismiss Count Three of the Superseding Indictment, conspiracy to commit money laundering on the ground of improper venue. (Def. Br. at 2.) Defendant argues that "[t]his count . . . does not specify where this conduct occurred, and it does not describe any of the financial transactions at issue. Nevertheless, the defense believes it has identified the subject transaction. With respect to that financial transaction, venue is completely improper in the Eastern District of New York." (Id.)

A prosecution for conspiracy to commit money laundering may be brought in either (1) "any district in which the financial transaction or monetary transaction is conducted," (2) "any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted," or (3) any district "where an act in furtherance of the . . . conspiracy took place." 18 U.S.C. § 1956(i)(2).

Defendant argues that the financial transaction that appears to be the subject of Count Three was conducted in Manhattan, which is located in the Southern District of New York. Defendant argues: "As Mr. Bronson understands it, the subject money was given to Mr. Bronson in his office in Manhattan for purposes of investing in his son's company, which was also located in Manhattan. The money was thereafter deposited into a financial institution again located in Manhattan. In addition, the Government has not alleged, and in fact there were no[] other acts in furtherance of this financial transaction that took place within the Eastern District of New York." (Def. Br. at 16.) Defendant finally argues that, "even if the government could

13

establish that the specified unlawful activity that was the source of the money laundering occurred in the Eastern District of New York, it would not be a proper basis for venue in this District because Mr. Bronson did not participate in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." (Id. (citing 18 U.S.C. § 1956(i)(2) (quotation marks omitted).)

In its reply brief, the Government – like its argument about venue for Count One – argues that the Superseding Indictment need only state that the criminal acts occurred in the Eastern District of New York in order adequately to allege venue and that the Superseding Indictment satisfies the pleading standard. (Govt. Response at 14-15 (citing Superseding Indictment ¶¶ 13, 16).) As with Count One, the Government further argues that it will adduce more facts regarding venue at trial. (Govt. Response at 17 n.6.)

Here, as above in considering venue with respect to Count Two, I find that Government has satisfactorily pleaded venue for purposes of the Superseding Indictment by alleging that criminal conduct occurred within the venue.

### 4.    Count Four (Contempt of Court)

Defendant further asks the court to dismiss Count Four of the Superseding Indictment, contempt of court for having aided and abetted a client of his on pretrial release in the Eastern District of New York violate the conditions of pretrial release by misrepresenting the individual's whereabouts to officers of United States Pretrial Services. (Def. Br. at 2.) Defendant agues that "[t]he statute governing violations of pretrial release . . . makes it clear that only the Court – not the Government – has the authority to initiate contempt of court proceedings based upon a violation of pretrial release." (Id.) As with Count Two, the Government alleges a violation of 18 U.S.C. § 401 under two alternate theories: (1) that

14

Defendant aided and abetted an individual commit contempt of court by violating his pretrial release under 18 U.S.C. § 3148(c); and (2) that Defendant's actions were contemptuous in and of themselves under 18 U.S.C. § 401.[3]

The Government's argument that Defendant substantively violated § 401(3) fails. The Government again does not identify any specific court order directed to Defendant that Defendant then disobeyed. Rather, the only court order referenced in any of its motion papers is the order prohibiting Defendant's client from violating conditions of his pretrial release. The Government's second theory, that Defendant aided and abetted his client's contempt of court, also fails. This analysis hinges on a reading of the pretrial release statute, 18 U.S.C. § 3148. 18 U.S.C. § 3148(b) states in pertinent part that "[t]he attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court." 18 U.S.C. § 3148(c) states in pertinent part that "[t]he judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release."

Defendant argues that this section bars the Government from bringing this charge since, under the pretrial release statute, only a judicial officer can initiate a contempt proceeding, not the Government. (Def. Br. at 23.) Thus, Defendant argues, since only a judicial officer can bring such a contempt proceeding for a violation of a pretrial release condition, the Government cannot bring a proceeding for aiding and abetting a violation thereof.

Defendant cites one case, United States v. Herrera, 29 F. Supp. 2d 756 (N.D. Tex. 1998), which dealt with a violation of a pretrial release order, in which the court strictly construed the pretrial release statute to mean that *only* the judicial officer may bring contempt proceedings and

_____

[3] Section 401(3), as noted above, grants the court authority to punish an individual who disobeys or resists a court's "lawful writ, process, order, rule, decree, or command."

15

*only* the Government may bring a proceeding to revoke an order for pretrial release. As the court wrote: "The explicit inclusion only of the attorney for the government is properly understood as an express exclusion of all others." Id. at 759.

I agree with the Herrera court. When construing a statute, "the plain meaning of the words Congress chose must be given effect, unless there is some good reason to suppose the legislature intended those words to have a more restrictive meaning." Vango Media, Inc. v. City of New York, 34 F.3d 68, 74 (2d Cir. 1994). Furthermore, "'where Congress includes particular language in one section of a statute but omits it in another' we should refrain from reading into the statute a phrase that Congress has left out of the latter section." Moreno-Bravo, 463 F.3d at 261-62 (citing Keene Corp. v. United States, 508 U.S. 200, 208 (1993)).

The language Congress used in this statute is clear and unambiguous and the court has no reason to interpret the statute contrary to the plain meaning of the words. A plain reading of Section 3148(c) permits only a judicial officer to initiate a prosecution for contempt if the person violated a condition of his release. This interpretation is also consistent with a holistic reading of § 3148. Section 3148(a) sets out the available sanctions for one who violates pretrial release. Section 3148(b) relates to revocation and detention and states that only the Government may initiate the proceeding. Finally, Section 3148(c) addresses contempt of court and states that only a judicial officer may initiate the proceeding. Sections (b) and (c) clearly assign specific roles to the Government and the judicial officer, and it flies in the face of congressional intent to interpret the statute to give the Government the authority to initiate a contempt of court proceeding under § 3148.

The Government argues that the pretrial release statute is designed to allow "special powers" to the court and the Government when it comes to violations of pretrial release: that the

court may bring criminal charges in the form of contempt, and that the Government may enforce a court's standing order. The Government further contends that these "special powers" as given here are not meant in any way to strip either branch of the powers it normally exercises; thus, the Government is permitted to initiate a contempt proceeding, as it always has, even if it is not specifically delineated in the statute. (Govt. Response at 26.) Defendant counters that these powers are not "special powers" but rather are specific descriptions of powers that the Government and judicial officers have long had.

The Government's interpretation runs contrary to the plain language of the statute. Congress's grant of authority was clear, and the plain meaning of the statute undermines the Government's argument. Thus, I am unpersuaded by both of the Government's theories of liability for Court Four. The Government does not point to, and I cannot identify, a specific order or decree of the court directed at Defendant that Defendant has violated, and thus I cannot agree that the Superseding Indictment adequately alleges that Defendant substantively violated the contempt statute. Furthermore, I am similarly unpersuaded by the Government's aiding and abetting theory, which is precluded by the pretrial release statute. Accordingly, I grant Defendant's motion to dismiss Count Four.

**5. Defendant's Alternative Request for a Bill of Particulars To Clarify the "Vague Allegations" in Counts One, Three, and Four**

Defendant argues that, should the court not dismiss the counts in the Superseding Indictment, that it direct the Government to provide Bronson with a bill of particulars to clarify the "vague allegations" in Counts One, Three and Four. The Government opposes this request. First, as the court has dismissed Count Four, the request for a bill of particulars is denied as moot. Furthermore, I deny Defendant's motion for a bill of particulars on Counts One and

17

Three.  Defendant cites to <u>United States v. Barnes</u>, 158 F.3d 662, 666 (2d Cir. 1998), for the proposition that "a bill of particular or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge."  (Def. Br. at 26.)

With regard to Count One, Defendant seeks a bill of particulars identifying "(1) the particular individuals referenced in Count One as 'witnesses,' 'an individual,' and 'various individuals,' (2) the particular acts of 'obstructing justice,' 'tampering with witnesses,' 'bribing and attempting to bribe witnesses,' 'potential retaliation,' and 'implied threats of physical violence' alleged in Count One, and (3) how 'Bronson used his role as an attorney to, among other things, help members of LCN.'"  (<u>Id.</u> at 30 (citations omitted).)  Defendant argues that the Superseding Indictment "impermissibly places upon Mr. Bronson the burden of preparing to defend anything and everything he did as a lawyer between March 1, 1999 and July 1, 2005" and is so "impermissibly vague that [it appears] to encompass . . . legitimate aspects of the attorney-client relationship."  (<u>Id.</u> at 29, 32.)

For Count Three, Defendant seeks a bill of particulars giving specifics regarding the financial transactions that are at issue, the alleged co-conspirators, and where the conduct took place other than the general statement of "in the Eastern District of New York and elsewhere." (Def. Br. at 35.)  Defendant argues that "if Mr. Bronson wanted to show as part of his defense that the transactions had a legitimate business purpose or that he did not know the proceeds were from unlawful activity, he will have to prepare to defend every financial transaction he was connected to, in any way, between July 2001 and January 2003, lest he guesses wrongly as [to] the transaction at issue."  (<u>Id.</u>)

The Government, in its response, notes that additional details are necessary only where

the indictment is too vague to inform the defendant of the nature of the charges, avoid unfair surprise, and allay double jeopardy concerns. (Govt. Response at 27.) The Government argues in reply that (1) the other information disclosed by the Government sufficiently apprises Bronson of the charges, (2) the Government is not required to disclose the identities of unnamed persons in the Indictment, and (3) Bronson is not entitled to any additional particulars concerning location. (Def. Br. at 27-36.)

A bill of particulars is warranted "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). I previously held in United States v. Urso, 369 F. Supp. 2d 254, 272-73 (E.D.N.Y. 2005) (Garaufis, J.), that defendants are generally "not entitled to receive details of the government's conspiracy allegations in a bill of particulars," and "details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial." As a general rule, a defendant is not entitled to receive details of the Government's conspiracy allegations in a bill of particulars. United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989), cert. denied, 493 U.S. 834 (1989). More specifically, details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial. United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). Furthermore, I have ruled in the past that:

> [D]efendants charged with extreme acts of violence should not be granted early disclosure of the government's theories as to the identities of unindicted co-conspirators. Considering the incidence of violence by, among, and against members of the Bonnano family and those who have done business with it, I therefore conclude that disclosure of the identities of the alleged, unindicted co-conspirators is not warranted.

19

Urso, 369 F. Supp. 2d at 254; cf. Fed. R. Crim. P. 16 (authorizing the court to grant a protective order). Here, as in Urso, Defendant's acts are part of a charged RICO conspiracy including mafia-related activity.

Regarding discovery, the Government points to a number of documents and other evidence it has turned over to the defense, which the Defendant does not contest receiving. The Superseding Indictment along with the Government's previous disclosures – including a September 30, 2005 detention letter ("Detention Letter"), a detention hearing, and discovery – properly spell out the facts behind the charges "of which Bronson . . . now claims ignorance." (Govt. Response at 28.) As the Government notes: "The letter details in great specificity the who, how, when, where and even why of the RICO conspiracy charged in count one." (Id. at 29.) The Government further has supplied Defendant with hundreds of discovery exhibits, transcripts, FBI reports, minutes of court appearances, surveillance, physical evidence, tape recordings made by Bronson and co-conspirators, and financial and business records, which "make[] plain Bronson's actions underlying the indictment. Furthermore, with regard to Count Three, conspiracy to launder the proceeds of narcotics trafficking, the Government has turned over to Defendant, *inter alia*, (1) a letter from Bronson to the wife of convicted narcotics trafficker and Bronson client Benjamin Salmonese stating that Bronson received $100,000 in "wedding gift" funds from Freeman as a bridge loan to his son's company and that Bronson agreed to repay the loan bi-weekly together with over $100,000 worth of securities, and (2) banking records showing a series of checks from Bronson's law firm to Freeman paying back this money in smaller amounts. (Govt. Response at 29-30.)

Furthermore, I have reviewed the Detention letter, which already provides Defendant with great detail about his alleged criminal conduct. Additionally, the Government has made

assurances, both in moving papers and in oral argument before the court, that it has provided and is continuing to provide Defendant with voluminous discovery so that he may properly prepare a defense. Defendant's position that he knows little to nothing about the nature of the charges is incongruous with the multitudinous amount of discovery with which he has been provided. The Government is cautioned to give Defendant proper discovery materials dealing with any and all acts that it intends to use as an underpinning for this criminal prosecution; however, at this stage of the litigation, I will rely on its assurances that it has done so and will continue to do so on a timely basis.

### 6. Defendant's Request for Early Disclosure of <u>Giglio</u>, <u>Jencks</u>, and 404(b) Evidence

Defendant finally requests that, should the Court not dismiss the Superseding Indictment, the Government be ordered to disclose <u>Giglio</u> and <u>Jencks</u> materials at least ninety days before trial for their "effective use at trial." (Def. Br. at 38.) Defendant also requests that the court order the Government to provide notice, thirty days prior to trial, of any evidence pursuant to Rule 404(b) that the Government plans to introduce at trial. (<u>Id.</u>)

### A. Request for Early <u>Giglio</u> and <u>Jencks</u> Materials

Defendant asserts that a ninety-day period is warranted, because the RICO conspiracy alleged in Count One is a key part of the Government's case, and involves a complex set of facts, including several cooperating witnesses and voluminous and complex evidence over a six-year time span. (Def. Br. at 38; Def. Reply Br. at 23.)

In response, the Government cites a number of cases for the proposition that there is no general right to discovery of <u>Jencks</u>, <u>Giglio</u>, and <u>Brady</u> material before trial. (Govt. Response at 36-41.) It argues that disclosure ninety days before trial is unwarranted because Defendant has

failed to explain how the evidence is necessary to preparing his defense.  (Govt. Response at 42.)

The Government further argues that such disclosure would present a risk of witness tampering, a

crime with which Defendant has been charged in the past.  (Govt. Response at 41-42.)  The

Government suggests that it should "adhere to its customary practice of producing such material

prior to the testimony of its witnesses."  (Govt. Response at 42.)

Defendant responds that the risk of witness tampering is unfounded.  (Def. Reply Br. at

23.)  Moreover, Defendant argues that there is little risk of witness tampering resulting from

early disclosure, because the requested evidence includes a substantial amount of testimony and

materials used in prior proceedings.  (Id.)

With regard to the requested Jencks materials, 18 U.S.C. § 3500(a) states that "no

statement or report in the possession of the United States . . . shall be the subject of subpoena,

discovery, or inspection until said witness has testified on direct examination in the trial of the

case."  In Coppa, the Second Circuit held that, in determining when the Government should be

required to turn over Giglio and Jencks materials, a court should consider "the materiality of that

evidence . . . as well as the particular circumstances of the case."  267 F.3d at 142.  Furthermore,

I have previously ruled that:

> Jencks Act materials which are not otherwise discoverable under the Brady or
> Giglio doctrines may not be the "subject of subpoena, discovery or inspection"
> until the relevant witness has testified on direct examination. 18 U.S.C. § 3500(a);
> United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001).  Accordingly, a district
> court is without discretion or authority to order the government to release such
> material prior to trial.  Id.

Urso, 369 F. Supp. 2d at 273.  I hold the same here in the instant case.

Furthermore, with regard to the requested Giglio, I have previously ruled that:

> The government has a clear obligation under Brady to disclose any
> material exculpatory information in its possession, and under Giglio to

22

disclose any material information relating to the credibility of the government's witnesses . . . . I also note, however, that the issue of when the government's obligation to make such disclosures attaches is not easily amenable to adjudication by a trial court. As the Second Circuit clarified in <u>Coppa</u>, 267 F.3d at 142, "the prosecutor must disclose 'material' . . . exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made. . . . Thus, we have never interpreted due process of law as requiring more than that <u>Brady</u> material must be disclosed in time for its effective use at trial." <u>See also</u> <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of [the] disclosure Brady and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.")

<u>Id.</u> at 273-74.  I accordingly decline to order the Government to make an early disclosure of

<u>Giglio</u> materials.  That said, as I told the Government at oral argument, early disclosure of

<u>Jencks</u> and <u>Giglio</u> materials greatly aids the court since late disclosure has the real potential of

disrupting the flow of trial.

### B.      Request for Early 404(b) Evidence

Defendant also requests that the court order the Government to provide notice, thirty

days prior to trial, of any evidence pursuant to Rule 404(b) that the Government plans to

introduce at trial.  (<u>Id.</u>)  Rule 404(b) requires the Government to provide "reasonable notice of

other crimes, wrongs, or acts it intends to introduce at trial" in order to "reduce surprise and

promote early resolution on the issue of admissibility."

Defendant argues that because Count One of the indictment fails to specify alleged "other

acts" and the nature of the conduct that the Grand Jury found to be criminal, Bronson requires

thirty days notice so that he may adequately prepare his defense, avoid surprise, and resolve

admissibility issues.  (Def. Br. at 39.)  Defendant cites to a number of cases, none of which are

binding, in which a court granted a defendant Rule 404(b) evidence in advance of trial.  (<u>See</u>

Def. Br. at 39-40.)  In any event, the Government asserts it will provide two-weeks notice of

Rule 404(b) evidence before trial, citing a number of cases from the Southern District of New

York which hold that "reasonable notice" constitutes two weeks before trial.  (Govt. Response at

43-44.)

 For the reasons given above, I similarly decline to order the Government to disclose any

404(b) evidence to Defendant thirty days before trial.

### III. CONCLUSION

 For the foregoing reasons, Defendant's pretrial motions are granted in part and denied in

part.  Specifically, his motions to dismiss Counts One and Three in the Superseding Indictment

are DENIED, and Defendant's motions to dismiss Counts Two and Four in the Superseding

Indictment are GRANTED.  Defendant's alternative motion for a bill of particulars and for early

disclosure of Giglio, Jencks, and 404(b) materials is DENIED.

 Finally, although I found the Superseding Indictment to be insufficient as a matter of law

on Counts Two and Four, the factual allegations associated with these counts respecting a

member of the bar, if true, are very serious and deeply trouble this court.  At times, a criminal

prosecution may be the proper mechanism for the proscription of an individual attorney's alleged

actions.  But the body of criminal law does not cover all ill deeds, and punishment should not

escape an officer of the court who may not have acted criminally, but whose actions nonetheless may have violated the rules of the legal profession. Accordingly, upon completion of these proceedings, I will make a determination as to whether to refer Bronson to the appropriate disciplinary committee.

SO ORDERED.

Dated: August 23, 2007                /s Nicholas G. Garaufis
Brooklyn, N.Y.                    NICHOLAS G. GARAUFIS
                                 United States District Judge